UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

UNITED STATES OF AMERICA                                                                    Plaintiff

v.                                                                     Criminal Action No. 4:23-CR0002-6 -RGJ

WILLIAM SIMMONS                                                                              Defendant

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Defendant William Simmons ("Simmons") moves the Court "to withdraw the Federal Detainer lodged against him due to the United States relinquishing its primary custody/jurisdiction to the State of Kentucky when the USMS turned Petitioner over to Sta[t]e [sic] custody after Federal sentencing. Petitioner request[s] [sic] the District Court withdraw the Federal Detainer and to run the 48 months Federal sentence fully concurrent with the Petitioner's State sentence on all case no. in the State of Kentucky." [DE 443 at 2219]. Simmons also moves on a civil form, to proceed without prepaying fees or costs. [DE 444]. The United States did not respond. The matter is ripe. For the reasons, below Simmons's motions [DE 443; DE 444] are **DENIED**.

**BACKGROUND**

Simmons was federally indicted in on February 15, 2023. [DE 1]. A federal arrest warrant was issued the same day. [DE 13]. Two task force officers went to his residence to serve the federal warrant, and the docket sheet reflects that he was arrested on the federal warrant on February 21, 2023. [DE 443-1 at 2238]. Simmons had his initial appearance before the magistrate judge on February 23, 2023. [DE 29]. The order states that Simmons was present and in custody and he was appointed counsel. [*Id.*]. A detention hearing and arraignment were also set and he was remanded to the custody of the United States Marshal Service ("USMS") pending the arraignment and

1

detention hearing. [*Id.*]. The federal docket sheet shows no evidence that he was at any time in state custody or that any Writ was ever requested. He was housed by the USMS starting after 3:30pm on February 21, 2023, with February 22, 2023 being the first full day USMS paid for housing.

Moreover, it appears from Simmons's documentation that the Kentucky Department of Corrections agreed that he was in federal custody in denying his ability to continue his revocation proceedings, stating

> When you were arrested on your KY parole violation warrant on 02/21/2023, you were also brought into Federal custody *at the same time*. As Federal jurisdiction takes precedence you were not technically in our custody to continue the revocation process. As a result, no review or decisions has been conducted – the process halted due to the Federal writ.

[DE 443-3 at 2240 (emphasis added)].

Simmons pleaded guilty on August 9, 2024 to a one-count Superseding Information. [DE 352; DE 353; DE 354; DE 357]. On November 7, 2024, the Court sentenced Simmons to 48 months imprisonment for use of a communication facility in facilitating distribution of controlled substances in violation of 21 U.S.C. § 843(b). [DE 411 at 2068-69]. The judgment states:

> The term of imprisonment imposed herein shall run consecutive to the sentence of imprisonment the defendant is presently serving in Daviess Circuit Court cases 11-CR-00189, 12-CR00344, and 20-CR-00488, Kenton Circuit Court case 16-CR-01059, and Jefferson Circuit Court case 21-CR-000294. The 48 MONTHS term of imprisonment imposed herein shall run concurrent with Daviess Circuit Court Case Number 24-CI-196.

[*Id.* at 2069].

The unique circumstances of Simmons's custody were specifically addressed at the sentencing because the discussion is important to the Bureau of Prison's calculation of his service time. The lengthy discussion is included below nearly in its entirety.

2

THE COURT: Okay. And the confusing part about this is that it appears that he was arrested on two warrants, one a state warrant and one a federal warrant, on the same day. The state warrant, as I understand it, is for absconding, and that was issued prior to the federal indictment, which was several days prior to when he was actually arrested on the federal charge. The Daviess Circuit Court case, which says it's related, was actually a new state charge he picked up on the day he got arrested on the federal and state absconding charge from what they found at the time of the arrest. Is that correct?

MR. LOCK: You are correct.

\*\*\*

THE COURT: It took us a little while to figure that out, because you are not here on a writ.

MR. DAHL: Right.

THE COURT: You are here in straight federal custody, which is a little odd, because under those circumstances I think normally we would see the state court taking possession of him at the Daviess County jail, but it turns out the feds -- I don't know. Somebody signed the paperwork first, so -- and that's why it's -- there is no other state sentence on that related charge for me to run mine with because it hasn't been done yet. They don't have him in custody. Same thing with the -- same thing with your parole violation. You're not in their custody yet. So everything from that date to now is going towards his federal sentence.

MR. LOCK: Exactly. And that's what I've – that's what I've told Mr. Simmons.

\*\*\*

MR. LOCK: … And because of all that, everything you just said, leads me back to where I was, which the state parole board refused to revoke him notwithstanding that he said they got me, just go ahead and revoke me, let's get this thing moving on down the line. The state refused to revoke him and said we're not taking any action on his parole until he is out of federal custody. So he's not gotten any credit for that. They've not revoked him. He's still got the revocation pending with the parole board, but what the parole board notices that have been provided to him and me both say is that until he's out of federal custody, they're not addressing his case at all. Which I will say, in 15 years of doing state and federal defense both, this is the first time I've had this particular type of issue arise. And it is somewhat unique how it's all come together.

THE COURT: All right. Hold on a second, because my understanding is it says in the system he is revoked.

MR. LOCK: Let me see here.

THE COURT: Did you sign a paper the day you got arrested –

THE DEFENDANT: I got a paper –

THE COURT: -- for the state court?

MR. LOCK: We've got a letter there that tells him what -- yes. Well, it wasn't the day. It was in April. We're happy to let you see both of those, Judge. And then I've got e-mails from the parole board somewhere in here I can find where they're tell me they're not doing anything on him. But that letter says it, I believe sufficiently.

THE COURT: So did you have a hearing on your parole violation ever or –

THE DEFENDANT: I waived it . . . I waived it all.

THE COURT: But when they brought you to Daviess County jail on the February 21st when they arrested you on the warrants, did you sign anything related to your parole violation?

THE DEFENDANT: Yeah. I've signed a whole bunch of stuff.

THE COURT: Okay. So in the computer –

MR. LOCK: Is that KOOL, may I ask? Are you looking at Kentucky online offender look up, or have you got something else.

PROBATION OFFICER: I've got something else.

THE COURT: It says you're revoked. And the only argument I would have with the letter that they sent you from the Department of Corrections in Kentucky parole board, it says the process was halted due to the federal writ. There is not and was not ever a federal writ.

MR. LOCK: You're right.

THE COURT: They probably thought, like in all the 99 percent of the other cases that occur, that you were taken into state custody and then writted out. That did not happen here, which means you right now are serving only your federal time. You are -- every moment that you've been in custody from the 21st on, you have been serving your federal time. That letter unfortunately is just – it's just wrong. It's not correct. There's never been a federal writ. And she's going to show you what we see, which shows that you've been revoked already, which makes me wonder if when you walked in the door in Daviess County jail, you can waive your right to that hearing.

THE DEFENDANT: When they –

THE COURT: Well, you're saying you did it in April, but I'm saying on February 21st, they should have asked you if you wanted to waive your right on that. And you could have waived your right to a hearing, in which case you could have been revoked then. That's what it looks like in the system occurred.

THE DEFENDANT: Your Honor, I was arrested on that on February the 21st. I didn't get a federal indictment until the following day. I was in state custody overnight, and then the next morning I went into fed.

THE COURT: Okay. Well, technically the federal indictment was issued like five days before you were arrested, and they had in their possession two separate warrants, one for your absconding and then one for the federal case. They had both of those in possession. Now, normally what would happen is when you went into Daviess County jail, you would be taken into Daviess County custody on the state charge. There was never a writ issued to you, and the feds just took you –

MR. LOCK: And kept you.

THE COURT: -- and kept you in federal custody. So I'm not sure I can do -- I mean, I know I can't do anything about that. But just for purposes of your argument, you have been serving that federal time. So whatever sentence I issue today will have started on February 21st of 2023. That sentence will have started. After you serve the federal sentence, then you would be, I assume, sent back to state custody at that point in time. Now, once I issue a sentence, there's a possibility now that you've signed that form that you could theoretically try to have that other thing taken care of, but you have to go back into state custody in order for that to happen. They can't borrow you from us, and we have to get a writ from the governor to borrow you from them. So you will complete your federal service of your sentence, and then you will go back to state custody to resolve those issues. …They revoked you, but they never took you into custody. So I don't even think you served one -- it does not appear you served any time in state custody. So that's something that I can't fix. But I want you to know what you are serving right now and why it's going to be slightly different than maybe it would be in other circumstances.

[DE 453, Nov. 7, 2024 Sentencing Hearing Official Transcript at 2356–61].

According to Simmons's motion, after his sentencing in this Court, on November 13, 2024, he was transported from the Federal holdover facility in Daviess County to the Federal Transit Center in Grayson County for transfer to the Bureau of Prisons. [DE 443 at 2220; DE 443-2]. As such, Simmons asserts that he satisfied the statutory requirements for commencement of his

5

sentence. [*Id.*]. However, Simmons was then transferred back to Daviess County Detention Center on December 5, 2024 and relinquished to state custody. [*Id.* at 2221]. He then alleges that he was revoked on his state parole violation on January 23, 2025. [*Id.*].

Simmons now challenges the calculation of his 21 months of pre-sentence credit in federal custody from February 21, 2023–November 1, 2024, which the BOP has applied to his state sentence. After receiving this motion, the Court investigated the discrepancy between the federal record and the BOP rulings which found that Simmons was in primary state custody, particularly considering the assertion that the "Federal writ" stopped the revocation process. [DE 443-3 at 2240]. First, it is undisputed in the record that ***Simmons was never in Federal custody on a writ***. This Court never signed a writ and, as a result, the record shows him in primary federal custody which the Court took into account in sentencing. Second, it is also undisputed that federal task force officers were executing the Federal Arrest Warrant at the time Simmons was taken into custody. Federal agents thus brought Simmons to the Daviess County Detention Center on the Federal Arrest Warrant on February 21, 2023. While executing the Federal Arrest Warrant, they discovered other violations and issued an additional uniform citation. The uniform citation was only issued because of what the officers observed while executing the Federal Arrest Warrant. Third, according to the service documents, Simmons was not served with the state parole warrant until 6:30 p.m., after Simmons was booked into custody by the federal task force agents. Simply put, because he was in federal custody, the state parole warrant should never have been served on him without permission of the USMS. Fourth, despite being scheduled to appear for a federal initial appearance, the Daviess County Detention Center permitted Simmons to be taken to state court, while in federal custody, and arraigned on the uniform citation. This was done without the

6

permission of the USMS and, given that he was in federal custody on a federal warrant, Simmons never should have been transported in state custody.

## DISCUSSION

"Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013).

The Bureau of Prisons has the sole authority to compute pre-disposition time service credits. 18 U.S.C. § 3585(b); *United States v. Wilson*, 503 U.S. 329, 333 (1992). Under the BOP policy, "Prior custody time credit is controlled by 18 U.S.C. 3585(b)." *See* https://www.bop.gov/policy/progstat/5880_028.pdf accessed on Jan. 21, 2026. Under 18 U.S.C. 3585(b):

> (b) Credit for Prior Custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; **that has not been credited against another sentence**.

(emphasis added).

A post-conviction motion attacking either the execution of a sentence or confinement that is not the result of a trial court's judgment must be brought in a petition pursuant to 28 U.S.C. § 2241 in the district where the defendant is incarcerated or in a regional BOP office. *See* 28 U.S.C. §§ 2241, 2255; *Capaldi v. Pontesso,* 135 F.3d 1122, 1123 (6th Cir.1998); *United States v. Gobin*, No. 4:19-CR-20-RGJ, 2024 WL 4648060, at *4 (W.D. Ky. Oct. 31, 2024); *Rambo v. Hogsten*, No. CIV.A. 10-116-ART, 2010 WL 4791970, at *2 (E.D. Ky. Nov. 17, 2010) ("Because Rambo is challenging the manner in which the BOP is executing his sentence, rather than the

validity of the sentence itself, his § 2241 habeas petition is the appropriate vehicle.") (citing *Capaldi,* 135 F.3d at 1123)).

Here, Simmons does not challenge the sentence itself, but requests this Court calculate and require BOP to credit him with certain time. Thus, Simmons may only seek such relief through a § 2241 habeas petition, and he may only file such petition in the federal court located in the district in which he is incarcerated, or where a regional BOP office is located. *United States v. Powell*, No. 5:11-CR-75-JMH-1, 2019 WL 1521972, at *1 (E.D. Ky. Apr. 8, 2019).

A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). While this Court is certainly concerned with the BOP's calculation of Simmons's sentence because it does not appear in keeping with the information before the Court at the time of sentencing, the Court is without the ability to modify its sentence to remove the federal detainer.

It does appear, based on the record, that Simmons should not have been served while in federal custody nor transported to state court while in federal custody. Likely this was allowed to occur because the Daviess County Detention Center houses both federal and state prisoners. Yet, regardless of the mistakes made in his custody, Simmons should not be penalized in the calculation of his sentence. As the Court clearly considered his primary federal custody on the record, the Court fully understands Simmons's concern with how his sentence is being executed by the BOP. Yet, regretfully, this motion is not the proper mechanism to seek relief.

Thus, **IT IS ORDERED** that Defendant Simmons's Motions [DE 433 and DE 444] are **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

February 5, 2026


Cc: Defendant, pro se